# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7347 | **DATE** | 2/10/2003 |
| **CASE TITLE** | Lopez vs. Smurfit-Stone | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant. 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons set forth on the attached order, defendants' motion to dismiss (3-1) is granted. Plaintiffs' motion seeking remand if the motion to dismiss is denied (9-1) is denied as moot. The case is hereby dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | | FEB 13 2003 | |
| ✓ | Docketing to mail notices. | | | date docketed | |
| | Mail AO 450 form. | | | docketing deputy/initials | |
| | Copy to judge/magistrate judge. | | | | |
| OR | courtroom deputy's initials | | | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NOELIA LOPEZ, et al.,                    )
                                          )
            Plaintiffs,                   )
                                          )
vs.                                       )        Case No. 02 C 7347
                                          )
                                          )
SMURFIT-STONE CONTAINER                   )
CORPORATION and JEFFERSON                 )
SMURFIT CORPORATION,                      )
                                          )
            Defendants.                   )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Noelia Lopez and sixty-three others similarly situated filed suit in the Circuit

Court of Cook County against their employer, Jefferson Smurfit Corporation, and its parent,

Smurfit-Stone Container Corporation. Plaintiffs claim that defendants have not paid them

overtime wages in a timely manner, in violation of Illinois law. Defendants removed the case to

federal court, contending that plaintiffs' claims are completely preempted by section 301 of the

Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185. Defendants now move for

dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the

Court grants defendants' motion.

## BACKGROUND

Plaintiffs are members of the Graphic Communications Union Local 415-S and are or

were employed on an hourly basis by Jefferson Smurfit Corporation. The terms of their

employment are subject to two successive collective bargaining agreements between Jefferson

Smurfit and the Local. The first covers the period of June 1, 1996 to June 1, 2002, and the

second covers the period of June 1, 2001 to June 1, 2006. Article 4, Section 2 of both

agreements provides:

> Overtime of half time, in addition to regular straight time hourly earnings, will be
> paid for hours worked over eight (8) hours per day and for any work performed
> outside a worker's regular shift.

Compl., Exs. 1C, 2B, 2C. Section 2 of the second agreement further provides:

> This section does not guarantee any specific amount of hours. This does not
> prohibit the Company from changing the hours, if business conditions warrant a
> change.

Compl., Ex. 2C. Plaintiffs allege that they have performed work "outside a worker's regular

shift" and are thus entitled to overtime compensation pursuant to this provision.

The Illinois Wage Payment and Collection Act (IWPCA), 820 ILCS 115/1-115/15,

dictates the timely payment of earned wages:

> All wages earned by any employee during a semi-monthly or bi-weekly pay period
> shall be paid to such employee not later than 13 days after the end of the pay period
> in which such wages were earned.

820 ILCS 115/4. Plaintiffs allege that thirteen days have elapsed since the end of the pay period

in which their overtime wages were earned and that defendants have not yet tendered the

additional compensation to which they are entitled. Plaintiffs claim that defendants are therefore

liable under the IWPCA for the past due overtime wages plus prejudgment interest and attorney's

fees.

The collective bargaining agreement also provides for a grievance procedure. Plaintiffs

allege that on or about May 17, 2002, they filed a grievance with Jefferson Smurfit and

demanded payment of the delinquent overtime wages. In addition to portions of both collective

bargaining agreements, plaintiffs attached the following documents to their complaint: 1) a copy

of their grievance filing; 2) a letter from Smurfit-Stone's employee relations manager in response

to the first step of the grievance procedure; and 3) a memo relaying the company's response to

the second step of the grievance procedure.

After removing the case to federal court, defendants filed the present motion to dismiss.

They argue two bases for their motion: plaintiffs' state law claim is preempted by section 301,

and plaintiffs have not alleged that they have exhausted available administrative remedies.

## DISCUSSION

When considering a motion to dismiss, we accept the plaintiffs' allegations as true,

*Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construe any ambiguities in the

complaint in plaintiffs' favor. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753

(7th Cir. 2002). The Court reads the complaint liberally, granting the motion only if "it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

## A.    Section 301 Preemption

Defendants contend that dismissal of plaintiffs' complaint is required because their

ILWPCA claim is completely preempted by section 301 of the LMRA. Section 301 provides:

> Suits for violation of contracts between an employer and a labor organization
> representing employees in an industry affecting commerce . . . may be brought in
> any district court of the United States having jurisdiction of the parties, without
> respect to the amount in controversy or without regard to the citizenship of the
> parties.

29 U.S.C. § 185(a). This section confers federal court jurisdiction over disputes that arise out of

collective bargaining agreements and also "authorizes federal courts to fashion a body of federal

law for the enforcement of these agreements." *Loewen Group Int'l, Inc. v. Haberichter*, 65 F.3d 1417, 1421 (7th Cir. 1995) (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988)). To ensure the uniform interpretation of collective bargaining agreements, section 301 preempts state law claims that touch on its subject matter: "issues raised in suits of a kind covered by § 301 [are] to be decided according to the precepts of federal labor policy." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985) (quoting *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104 (1962)) (alteration in original) (internal quotation marks omitted).

Whether section 301 operates to preempt a particular state law claim is a matter for "case-by-case factual analysis." *In re Bentz Metal Prods. Co.*, 253 F.3d 283, 285 (7th Cir. 2001). Not every dispute that tangentially involves a provision of a collective bargaining agreement is preempted. *Allis-Chalmers*, 471 U.S. at 211. Preemption will not occur if a dispute merely requires reference to, or consultation of, an agreement. *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994); *In re Bentz*, 253 F.3d at 285. Preemption is triggered, however, when a claim is "founded directly on rights created by collective- bargaining agreements," *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987), and when the resolution of a state law claim "depends on the meaning of, or requires the interpretation of, a collective bargaining agreement." *Loewen*, 65 F.3d at 1421 (citing *Lingle*, 486 U.S. at 405-06). Stated otherwise, a claim is preempted if it is "substantially dependent on an analysis of the terms of the collective bargaining agreement." *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 499 (7th Cir. 1996). Therefore, if the meaning of a contract term is at the heart of the dispute, section 301 will have preemptive effect. *Livadas*, 512 U.S. at 124; *Caterpillar*, 482 U.S. at 394.

The Court finds that plaintiffs' state law claim is preempted by section 301 because 1) it

is "founded directly on rights created by" the collective bargaining agreement, *Caterpillar*, 482 U.S. at 394, and 2) resolution of the dispute requires interpretation of the agreement.

*1.        Rights Are Created by the Collective Bargaining Agreement*

Plaintiffs argue that their claim merely involves the untimeliness of payment and that defendants' liability therefore arises under the IWPCA. Despite these contentions, however, there can be no real question that the predicate for plaintiffs' claim is Article 4, Section 2 of the collective bargaining agreement. The IWPCA did not create the plaintiffs' entitlement to overtime wages. In fact, the Seventh Circuit has stated that the IWPCA merely requires "that the employer honor his contract." *Nat'l Metalcrafters v. McNeil*, 784 F.2d 817, 824 (7th Cir. 1986).

As defendants maintain, no state law creates the right to payment of overtime wages for work performed outside a regular shift. This entitlement exists in this case only by virtue of the collective bargaining agreement. It is the agreement that is at the heart of the dispute: plaintiffs would not have a claim were it not for Article 4, Section 2.

The instant case is similar to *National Metalcrafters v. McNeil, supra*. There, the Seventh Circuit held that section 301 preempted the employees' IWPCA claim for vacation benefits to which they claimed they were entitled pursuant to a collective bargaining agreement. Because there was no independent statutory right to receive vacation benefits, the Seventh Circuit concluded that "[t]he only basis of the state-law claim in this case is that the company broke its contract." *Id.* at 824. The Seventh Circuit stated that section 301's remedy for breach of a collective bargaining agreement is "exclusive; no action to enforce such an agreement may be based on state law." *Id.* at 823; *cf. Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) ("[T]he pre-emptive force of § 301 is so powerful as to

displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" (quoting 29 U.S.C. 185(a))). Similarly here, plaintiffs' underlying claim is that defendants' breached an obligation that arose only from the collective bargaining agreement; it is likewise preempted.

### 2. *Interpretation of the Collective Bargaining Agreement*

The Supreme Court has said of collective bargaining agreements that "the meaning given a contract phrase or term [must] be subject to uniform federal interpretation." *Allis-Chalmers*, 471 U.S. at 211. Public policy requires such uniformity:

> Were state law allowed to determine the meaning intended by the parties in adopting a particular contract phrase or term, . . . [t]he parties would be uncertain as to what they were binding themselves to when they agreed to create a right to collect benefits under certain circumstances. As a result, it would be more difficult to reach agreement, and disputes as to the nature of the agreement would proliferate.

*Id.* If resolution of the parties' dispute requires the interpretation of the collective bargaining agreement, section 301 preempts plaintiffs' state law claim.

Defendants argue that plaintiffs' ILWPCA claim will require the interpretation of Article 4, Section 2. They maintain that plaintiffs, by fashioning their claim in the ILWPCA's terms of timing, have obfuscated the real issue demanding resolution in this dispute – whether plaintiffs have performed the type of work that would entitle them to overtime wages in the first place. Defendants argue that any resolution of this issue would require interpretation of the agreement, namely interpretation of the term "regular shift."

Plaintiffs deny that any interpretation will be required because no contract terms are in dispute. They maintain that the provision requiring compensation of time and a half for work

performed outside a regular shift is "clear and unambiguous." Pls.' Resp. at 4. They contend

that the issue to be resolved is equally plain: "Either the defendants paid half time, in addition to

straight time, for any work performed outside their regular shift, or they did not." *Id.* Plaintiffs'

position is that the Court will merely have to consult the agreement to calculate the amount of

overtime earned. If the agreement's meaning "is so clear that the company cannot in good faith

dispute the workers' vested rights to benefits under it," then section 301 does not preempt

plaintiffs' claim. *Nat'l Metalcrafters*, 784 F.2d at 828.

It is apparent from the documents attached to the complaint that the central issue to be

resolved is whether plaintiffs in fact performed any work "outside" their "regular shifts." On a

12(b)(6) motion, a court considers all the pleadings, which are taken to include the complaint,

any exhibits attached thereto, and supporting briefs. *Thompson*, 300 F.3d at 753; Fed. R. Civ. P.

10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all

purposes."). "[W]here a plaintiff attaches documents and relies upon the documents to form the

basis or part of a claim, dismissal is appropriate if the document negates the claim." *Thompson*,

300 F.3d at 754. Here, the exhibits to plaintiffs' complaint lend credence to defendants'

contention that resolution of their claim will require interpretation of the collective bargaining

agreement.[1]

The plaintiff's grievance form states: "Nature of Grievance: Forcing us off our regular

shift and not paying us 8 hrs. at time and a half worked outside our shift. Unhealthy and unsafe."

---

[1]On a related note, defendants attached the affidavit of Jefferson Smurfit's Employee
Relations Manager to their motion. Because the Court does not rely on this affidavit in reaching
its determination, we do not need to consider whether the affidavit can be considered part of the
pleadings and therefore be properly considered on this motion to dismiss.

Compl., Ex. 3A. A letter from Smurfit-Stone regarding the first step of the grievance procedure

states that after review of Article 4, Section 2, the company found that the provision was

"administered properly." Compl., Ex. 4A. The letter also states that the article neither

guarantees any specific number of hours nor prohibits the company from "changing the hours."

*Id.* A memo reporting the company's response to the second step of the grievance process is also

enlightening:

> The Company has not violated Section 2 of Article 4 of the current agreement.
> The practice of moving employees from one shift to another is not unheard of nor
> is it unsafe. That section of the contract clearly states that the Company does not
> guarantee any specific hours. The contract also states, in the same section, that
> the Company has the right to adjust the hours of the workweek.

Compl., Ex. 4B.

Taken together, these documents validate the defendants' position that the heart of the

dispute is whether plaintiffs are entitled to overtime wages under Article 4, Section 2 in the first

place. In the grievance form, plaintiffs claim they were "forced off" their regular shifts.

Defendants retort that changing a worker's shift is not "unheard of" and that the company has the

right under Article 4, Section 2 to alter work schedules. It is apparent that the parties have good

faith, conflicting interpretations of what conditions will trigger the entitlement to overtime

compensation. To resolve this conflict between the parties – a conflict whose resolution is

fundamental to the adjudication of plaintiffs' claim – the collective bargaining agreement will

require interpretation. As such, section 301 preempts plaintiffs IWPCA claim, and dismissal is

therefore appropriate.

**B.     Failure to Exhaust Administrative Remedies**

Having concluded that plaintiffs' sole cause of action lies under section 301, we consider

whether they can maintain an action under that provision. *Smith v. Colgate-Palmolive Co.*, 943

F.2d 764, 771 (7th Cir. 1991). The exhaustion of administrative remedies is a procedural

prerequisite to maintaining a section 301 action. *Id.* at 767. Before filing suit, federal labor

policy dictates that an employee is "[o]rdinarily . . . required to attempt to exhaust any grievance

or arbitration remedies provided in the collective bargaining agreement." *DelCostello v. Int'l*

*Bhd. of Teamsters*, 462 U.S. 151, 163 (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650

(1965)); *Smith*, 943 F.2d at 771.

Defendants argue that the complaint must be dismissed because plaintiffs do not allege

that they have exhausted all required administrative remedies. In their brief, they report that

"[p]laintiffs' grievances currently are pending at Step 4 of the grievance procedure, with the

opportunity to arbitrate available should resolution not occur." Defs.' Mem. of Law in Support

of Mot. to Dismiss at 5. Defendants maintain that plaintiffs' claims must first be submitted to

grievance arbitration procedures set out in the collective bargaining agreement.

The agreement's description of step four of the grievance procedure states "[i]f the parties

are unable to arrive at a satisfactory settlement at this step, the Union may submit the grievance

to arbitration." *Id.*, Ex. A at 20, B at 21. Although this provision is stated in permissive terms

and says nothing of an individual employee's obligation to arbitrate, plaintiffs are nonetheless

required to arbitrate their claims.

Only under two conditions can individual employees avoid the requirement of

administrative exhaustion. The first is where the parties have "expressly agreed that arbitration

[is] not the exclusive remedy." *Republic Steel*, 379 U.S. at 657-58. There is no such express

agreement here. *Cf. id.* at 658-59 ("Use of the permissive 'may' does not of itself reveal a clear

understanding between the contracting parties that individual employees, unlike either the union or the employer, are free to avoid the contract procedure and its time limitations in favor of a judicial suit."); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583 (1960)) (stating that "doubts" as to whether a collective bargaining agreement's arbitration clause covers a particular dispute "should be resolved in favor of coverage."). The second condition is where the employee has established a breach of the union's "duty of fair representation." *Smith*, 943 F.2d at 771. No such allegation has been made here. Because plaintiffs have failed to exhaust the remedies provided in the collective bargaining agreement, they cannot currently maintain a section 301 cause of action.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss [docket no. 3-1] is granted. Plaintiffs' motion seeking remand if the motion to dismiss is denied [docket no. 9-1] is denied as moot. The case is hereby dismissed.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 10, 2003